# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No. SACV 05-468-JVS(MLGx) | Date  October 19, 2005 |
| Title  Broadcom Corp. V. Qualcomm Inc. | |

DOCKETED ON CM
OCT 21 2005
BY _____ 082

Present: The Honorable  James V. Selna

| Karla J. Tunis | Not Present | None |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Not Present  Not Present

**Proceedings:**  (In Chambers)  Order Denying Defendant's Motion for Preliminary Injunction

Defendant and Counter-Plaintiff Qualcommm Incorporated ("Qualcomm") moves this Court for an order preliminarily enjoining and restraining Broadcom Corporation and its agents, officers, subsidiaries, assigns, and all other persons in active concert or participation with them (collectively "Broadcom") from asserting U.S. Patent Nos. 5,682,379 or 6,359,872 B1 (the "Subnetwork Patents") against Qualcomm's Bluetooth-related products and activities before the United States International Trade Commission ("ITC"). The motion is denied.

### I.  BACKGROUND

On May 18, 2005, Broadcom brought two actions in this Court against Qualcomm for patent infringement. On the next, day Broadcom brought a parallel proceeding before the ITC with respect to the five patents in this action. Qualcomm filed an answer and asserted various counterclaims in this Court and in the ITC. On August 4, 2005, upon a motion by Qualcomm, this Court stayed the present action, involving the same five patents as the ITC investigation, pursuant to 28 U.S.C. § 1659. Fact discovery in the ITC investigation will close on November 18, 2005. Expert discovery will end on December 20, 2005. A ten-day trial will begin on January 31, 2006.

On August 22, 2005, Qualcomm filed a complaint and a motion for preliminary injunction in San Diego (the "San Diego case"). Qualcomm Inc. v. Broadcom Corp., United States District Court for the Southern District of California, Case 05 CV 1662 B JMA. Qualcomm alleged that the Subnetwork Patents, two of the five claims at issue in this case and in the case before the ITC, are "inextricably intertwined" with a 2001 (the "Bluetooth RF Agreement") between Qualcomm and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 05-468-JVS(MLGx) | Date | October 19, 2005 |
| Title | Broadcom Corp. V. Qualcomm Inc. | | |

Broadcom. The Bluetooth RF Agreement's forum selection clause requires Broadcom to litigate any dispute "arising from" or "relating to" the contract in San Diego. (Pineda Decl., Ex. 3, ¶ 18)

Qualcomm asserts that Broadcom's patent infringement claims under the Subnetwork Patents are based on Qualcomm's activities under and relating to the parties' Bluetooth RF Agreement. (Pineda Decl., ¶ 11) Hence, Qualcomm views Broadcom's filing of those patent infringement claims in the ITC to be in direct contravention of the Bluetooth RF Agreement. (Id.)

Broadcom, however, argues that the Bluetooth RF Agreement is inapplicable to the present suit, because the agreement concerns the development of Broadcom's radio chips. By contrast, Broadcom seeks a ruling from the ITC excluding cell phones that include Qualcomm chips and radio chips developed by *other* manufacturers. (Opp'n, p. 2.) Broadcom stresses that the Bluetooth RF Agreement is not applicable because it has nothing to do with chips made by other manufacturers. (Id.)

Under the Bluetooth RF Agreement, Qualcomm provided the BlueQ Interface Specification to Broadcom to enable Broadcom to manufacture, develop, and sell Bluetooth RF Units that are compliant with Qualcomm's BlueQ Interface Specification. (Pineda Decl., Ex. 3, ¶¶ 3-4.) The Bluetooth RF Agreement also provides that "[u]pon successful completion of the development of the Bluetooth RF Unit by Broadcom, Qualcomm will include Broadcom on its list of vendors of Bluetooth RF Units that comply with the BlueQ Interface Specification and Qualcomm will use reasonable efforts to identify Broadcom as a BlueQ qualified vendor to Qualcomm ASIC Customers at Customer meetings." (Id., ¶ 5.) Additionally, under the Bluetooth RF Agreement, Qualcomm agreed to give Broadcom lists of Qualcomm ASIC Customers. (Id., ¶ 8.)

On September 8, 2005, Broadcom moved the Court to vacate the stay of these proceedings, entered on August 4, 2005, and to enjoin the proceedings in the San Diego case. On September 26, 2005, this Court granted Broadcom's motion, based on a finding that this Court is the proper court to decide where venue is permissible.

II. LEGAL FRAMEWORK

Although the standard is the same under Federal Circuit and Ninth Circuit case law, this Court finds that Ninth Circuit law is applicable to the grant or denial of the

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 05-468-JVS(MLGx) | Date | October 19, 2005 |
| Title | Broadcom Corp. V. Qualcomm Inc. | | |

instant motion for a preliminary injunction.

The grant or denial of a preliminary injunction is generally a procedural issue which is not unique to the exclusive jurisdiction of the Federal Circuit. Texas Instruments v. Tessera ("Tessera I"), 231 F.3d 1325, 1328 (Fed. Cir. 2000). However, Federal Circuit law applies when procedural matters arise from substantive issues in areas of law within the unique jurisdiction of the Federal Circuit. (Id.) In Tessera I, as here, the moving party requested the district court to enjoin the other party from the continued prosecution of a patent claim in the ITC. (Id.) In Tessera I, the court held that it has exclusive appellate jurisdiction over ITC determinations made under Section 337 of the Tariff Act of 1930, and therefore the appeal of the party who moved for the preliminary injunction related to a substantive issue in an area of law within the unique jurisdiction of that court. (Id.)

While Qualcomm asserts that under Tessera I, the Federal Circuit law applies to the present determination, this Court finds that Tessera I is distinguishable because that case involved the *review* of a district court's order. This Court's decision to grant or deny the instant motion for a preliminary injunction is a procedural issue which is not unique to the exclusive jurisdiction of the Federal Circuit, and thus Ninth Circuit law controls. The interpretation of the forum selection clause in the Bluetooth RF Agreement, a private contract, is not within the exclusive jurisdiction of the Federal Circuit, but rather is a question of state law. (Id.)

As the court states in Tessera, the Ninth Circuit applies the same four factors as the federal circuit in the determination of whether to grant or deny a motion for a preliminary injunction. (Id. at 1329.) In order to obtain a preliminary injunction in this case, Qualcomm must demonstrate: (1) likelihood of success on the merits; (2) the possibility of irreparable injury; (3) a balance of hardships in its favor; and (4) a public interest that will be advanced by granting the injunction. (Id.)

III. DISCUSSION

A. SUCCESS ON THE MERITS

The pertinent question in deciding whether the forum selection clause applies in this case is to determine "whether the claims can be adjudicated without analyzing whether the parties were in compliance with the contract." Manetti-Farrow, Inc. v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 05-468-JVS(MLGx) | Date | October 19, 2005 |
| Title | Broadcom Corp. V. Qualcomm Inc. | | |

Gucci America Inc., 858 F.2d 509, 514 (1988); Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc., 949 F. Supp. 1427, 1433 (N.D. Cal. 1997). The Court finds that the present claims cannot be adjudicated without analyzing whether Qualcomm and Broadcom were in compliance with the Bluetooth RF Agreement.

To avoid this result, Broadcom frames the present dispute as a patent-infringement suit unrelated to the Bluetooth RF Agreement. However, Qualcomm asserts that its defense to Broadcom's patent infringement claims in part relates to what the Bluetooth RF Agreement contemplated Qualcomm would do, and therefore the present dispute "relates to" that agreement. (Mot., p. 15.) Further, Qualcomm avers that Broadcom's patent infringement claims cannot be resolved without reference to, or consideration of, the Bluetooth RF Agreement, because the agreement is "inextricably intertwined" with the patent infringement claims. (Id., p. 17.) In sum, Qualcomm states that "Broadcom has sued Qualcomm, alleging that the very conduct Broadcom contractually required and otherwise encouraged Qualcomm to undertake – those same design and promotional efforts – violate patents that Broadcom acquired well into the relationship, but never mentioned to Qualcomm." (Id., p. 1.)

In Graham, court found that a full adjudication of the action required interpretation of the contract, even though the plaintiff contended that the claims were based only on copyrights, and hence were not within the scope of the parties' contractual forum selection clause. (947 F. Supp. at 1433.) As in Graham, the Court holds that the forum selection clause is implicated by "claims alleged in the complaint that *relate to* the interpretation of the contract." (Id.)

Qualcomm further asserts, "Broadcom licensed Qualcomm – whether expressly or impliedly – to engage in the very acts it now claims were infringing." (Id., p. 11.) Qualcomm's defense is that "Broadcom cannot accuse Qualcomm of inducing infringement, when Broadcom actively encouraged and collaborated in the inducement," and is estopped from suing Qualcomm on that basis. (Id.) Broadcom, however, avers that the Qualcomm granted Broadcom a license to Qualcomm's intellectual property so that Broadcom could create Bluetooth RF chips. (Opp'n, pp. 2, 6, 13.)

Despite Broadcom's assertions that the Bluetooth RF Agreement deals only with Qualcomm's grant of rights to Broadcom, the Court holds that under Mannetti-Farrow and Graham, the present dispute arises under, or relates to, the Bluetooth RF Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 05-468-JVS(MLGx)                                Date   October 19, 2005

Title   Broadcom Corp. V. Qualcomm Inc.

The Court finds that the resolution of the present issues depends, at least in part, on the parties' obligations under the Bluetooth RF Agreement, and specifically that Qualcomm's estoppel defenses bring the instant action within the ambit of the forum selection clause.[1]

### B.   IRREPARABLE INJURY

The Court finds that Qualcomm will not be irreparably harmed if the ITC proceedings are allowed to continue.

Qualcomm asserts that it will be irreparably harmed if it is forced to litigate the Subnetwork Patents portion of the infringement claim on two fronts, one in the ITC, in Washington D.C., and one in Southern California, thus losing the benefits it purportedly bargained for under the forum selection clause. (Mot., pp. 12, 22.) Qualcomm contends that this two-front battle will lead to disruption of its business, loss of good will, and financial hardship. (Id., p. 22.) Additionally, Qualcomm claims that if it is forced to litigate the Subnetwork Patents portion of the infringement claim in the ITC, it will face an agency lacking features that it bargained for under the forum selection clause; full-blow discovery, an Article III judge, and a jury. (Id., p. 23.) Further, Qualcomm avers that in the ITC proceeding it faces the possibility of an order telling U.S. Customs Service to block the importation of Qualcomm's product. (Id.)

However, the Court agrees with Broadcom that Qualcomm's undue delay in raising the present issue contradicts Qualcomm's above stated assertions of irreparable harm. The Court finds that Qualcomm's contentions concerning irreparable harm carry little weight in the face of Qualcomm's months-long delay in raising the issue of the forum selection clause. Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc., 762 F.2d 1374, 1377 (9th Cir. 1985) (holding that a long delay before requesting a preliminary injunction implies a lack of irreparable harm.) Additionally, the Court notes that Qualcomm proceeded with discovery in the ITC for months before raising the issue of the forum selection clause and the alleged irreparable harm it will face if a preliminary injunction is not issued with respect to the Subnetwork Patents.

---

[1] The Court, of course, makes no determination whether the asserted defenses under the Bluetooth RF Agreement are valid. The Court merely finds that the defenses must be resolved.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 05-468-JVS(MLGx) | Date | October 19, 2005 |
|---|---|---|---|
| Title | Broadcom Corp. V. Qualcomm Inc. | | |

### C. BALANCE OF HARDSHIPS

The Court finds that Qualcomm's asserted hardship of being forced to litigate the Subnetwork Patents portion of the infringement claim in the ITC is counterbalanced by the adverse impact that a preliminary injunction would have on Broadcom.

Qualcomm makes three arguments to support its assertion that Broadcom will suffer little, if any, harm by being required to abide by the forum selection clause. First, Qualcomm points out that Broadcom is a California corporation within its headquarters in Irvine, California, and thus litigation in this Court would not be overly burdensome. (Mot., p. 24.) Second, Qualcomm claims that the fact that Broadcom brought federal actions against Qualcomm in this Court shows that Broadcom is not against litigating in federal courts in this state. (Id.) Third, Qualcomm claims that this Court can grant Broadcom any relief that it could have obtained in the ITC, other than the U.S. Custom's Service's immediate seizure of Qualcomm's infringing imports. (Id.) Qualcomm states that Broadcom bargained away the right to such relief, and therefore cannot claim to be injured by the denial of that relief. (Id.)

However, the Court finds that Broadcom will be harmed by the issuance of a preliminary injunction, and ensuing delay of resolving the infringement claims. Both parties have already expended a great deal of time and money on the ITC Investigation. Specifically, between the time that the ITC began its investigation, and the time Qualcomm filed for a preliminary injunction, both parties expended time and money on discovery, document review, experts, and conferences. Additionally, both parties have spent time on ITC-specific issues, such as the requirement that Broadcom show that it has a "domestic industry" relating to the patents at issue. (19 U.S.C. § 1337(a)(2), (3)).

Further, the Court finds that if a preliminary injunction were ordered, Broadcom would lose the primary benefit of an ITC proceeding, a quick resolution of their patent rights. The Court finds persuasive the fact that ITC proceedings are "fast-track" proceedings, meaning by statute they are required to move quickly.

At oral argument, Qualcomm contended that recognition of any harm to Broadcom's right to a speedy disposition before the ITC would in effect reward Broadcom for its purported breach of the Bluetooth RF Agreement by conferring the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 05-468-JVS(MLGx) | Date | October 19, 2005 |
| Title | Broadcom Corp. V. Qualcomm Inc. | | |

benefit which Broadcom bargained away. Had the present motion been presented earlier, there would be substantial force to this contention. However, in view of the efforts expended to date in the ITC proceeding, Broadcom does not come before the Court as a simple miscreant who breached its contract.

### D. PUBLIC INTEREST

The Court finds that the public interest is not served by handicapping the ITC proceedings at this point in time, when both parties and the ITC Staff have already spent substantial effort in that proceeding. The Court finds that there is a strong public interest that weighs in favor of allowing the completion of the ITC proceedings. ITC proceedings are not instituted until the Commission reviews a complaint and determines that an investigation is necessary to protect the domestic industry. (19 CFR § 210.9; S. Rep. No. 100-71 at 128-29 (1987)).

Qualcomm avers that a strong public policy weighs in favor of enforcing forum selection clauses in commercial transactions. See generally, Stewart Organization Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J. concurring) ("Enforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.") However, Broadcom asserts, and the Court agrees, that in this case the public interest in favor of parties raising forum selection clause issues early, and allowing the completion of the ITC proceedings, outweighs the public interest in enforcing forum selection clauses.

### E. JUDICIAL ESTOPPEL

The Court additionally finds that Qualcomm is judicially estopped from obtaining a preliminary injunction to halt the ITC proceedings. Having successfully urged the Court to stay the litigation of the Subnetwork Patents in this case in favor of the ITC proceeding, Qualcomm cannot turn back now. Courts generally look to three factors in determining whether to apply the doctrine of judicial estoppel. All three factors are satisfied in this case.

First, a party's later position must be clearly inconsistent with its earlier position. New Hampshire v. Maine, 532 U.S. 742, 750 (2001). The Court finds that this factor is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 05-468-JVS(MLGx) | Date | October 19, 2005 |
| Title | Broadcom Corp. V. Qualcomm Inc. | | |

satisfied. On July 13, 2005, Qualcomm first represented to this Court that it should grant a stay of the proceedings concerning, among other patents, the two Subnetwork Patents, because those patents were at issue in the ITC investigation. However, Qualcomm now claims that those patents cannot be heard by the ITC because of the forum selection clause in the Bluetooth RF Agreement.

At oral argument, Qualcomm disavowed any inconsistency. However, the logic of moving the Court to stay this case in favor of the ITC came with the express, or at least implied, representation that the issues should first be addressed at the ITC. The logic of the present motion is that the issues should–for contractual reasons–not be addressed by the ITC.[2] That is a flat contradiction. If the Subnetwork Patent should never have been submitted to the ITC, there would have been no need to move a blanket stay which included the Subnetwork Patents.

Second, the party against whom judicial estoppel is asserted must have succeeded in persuading a court to accept its earlier position. (Id. at 750. This factor is satisfied because this Court granted a stay of the proceedings pursuant to 28 U.S.C. § 1659.

Third, the party against whom judicial estoppel is asserted must derive an unfair advantage or impose an unfair detriment if not estopped. (Id. at 751.) The Court finds that this factor is satisfied, because Broadcom will lose the opportunity for vindication of its patent rights under the fast track ITC proceedings if the preliminary injunction is

---

[2] In finding an inconsistency, the Court need not assume that Qualcomm made a decision to mislead the Court when it moved for the stay on this action. And indeed, the Court need draw no unfavorable inference from the fact that within three weeks of moving for a stay here, Qualcomm was in the San Diego Court moving to enjoin Broadcom from proceeding in the ITC. Again, one could speculate as to Qualcomm's legal theory for pleading a venue challenge in its answer, but the Court need not do so. It is sufficient here that the two positions are contradictory, and that the Court was invited to and in fact relied upon the first position in granting the stay in this action. The Court believes that there was adequate time for Qualcomm to identify its venue argument and to assert it by the time it moved the Court to stay this action, but it did not do so.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 05-468-JVS(MLGx) | Date | October 19, 2005 |
| Title | Broadcom Corp. V. Qualcomm Inc. | | |

granted. Although the fruits of discovery would not be lost, substantial effort on the part of both Broadcom and Qualcomm would be.

### F.     OTHER EQUITABLE CONSIDERATIONS

The Court finds that Qualcomm has unduly delayed bringing the instant motion, especially in light of the fast track nature of the ITC proceedings, and therefore Qualcomm has forfeited its right to injunctive relief with respect to the forum selection clause. See generally Lydo Enterprises Inc. v. City of Las Vegas, 745 F.2d 1211, 1213 (9th Cir. 1984). ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief.")

In light of Qualcomm's delay, the Court finds that Qualcomm's request for a preliminary injunction is barred by the doctrine of laches. In order to invoke the doctrine of laches, a party must show: (1) the opposing party lacked diligence in pursuing its claim; and (2) prejudice to the party asserting the defense. Neighbors of Cuddy Mountain v. U.S. Forest Service, 137 F.3d 1372, 1381 (9th Cir. 1998); Apache Survival Coalition v. United States, 21 F.3d 895, 905 (9th Cir. 1994).

With respect to the first element of the test, this Court finds persuasive the fact that Qualcomm has been aware of Broadcom's claim that Qualcomm infringed on the Subnetwork Patents for six months, since March 2005, but did not raise the applicability of the forum selection clause until late August 2005. Broadcom filed a complaint in the ITC on May 19, 2005, and on June 16, 2005, the ITC issued a Notice of Investigation naming Qualcomm as a respondent. Even if one delays the start of the analysis to the date of the filing of the present action, the delay was undue.[3]

---

[3] Although not in the record, Qualcomm's counsel represented at oral argument that the March discussions between Qualcomm and Broadcom involved over 800 patents and specific discussion of 36 patents. Even if one concedes that Qualcomm should not have been expected to identify the two needles in the proverbial haystack-the Subnetwork Patents-at that time, there was no longer any mystery when Broadcom filed the present suit in May specifically invoking the Subnetwork Patents.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 05-468-JVS(MLGx) | Date | October 19, 2005 |
| Title | Broadcom Corp. V. Qualcomm Inc. | | |

The Court also finds that Broadcom will be prejudiced by Qualcomm's lack of diligence, if the preliminary injunction is granted. Due to the fast track nature of the ITC proceedings, the ITC is approximately five weeks away from the close of fact discovery. As noted above, it would not serve Broadcom's interest, or the public interest to handicap the ITC proceedings at this point in time by issuing the requested preliminary injunction.

Additionally, Tessera I does not require the grant of a preliminary injunction in this case. In Tessera I, the alleged infringer sought a preliminary injunction against the patent holder, enjoining it from participating in the ITC proceedings on claims covered in a forum selection contained in a contract formed by the two parties. 231 F.3d at 1327. There the court found that an injunction was warranted on the merits, and remanded for consideration of the other preliminary injunction factors. (Id. at 1332.)

However, Qualcomm's reliance on Tessera I is misplaced due to Qualcomm's improper delay in raising the forum selection clause issue. In Tessera I, the party seeking to enforce the forum selection clause filed in the desired forum *before* the ITC complaint, and moved for a preliminary injunction *one week* after the ITC complaint was filed, three weeks before the ITC formally opened its investigation. 231 F.3d at 1327. Here, however, Qualcomm has waited *months after* the filing of the ITC complaint to raise the applicability of the forum selection clause.

IV. CONCLUSION

For the foregoing reasons, this Court denies a preliminary injunction directing Broadcom to cease its participation in the ITC action with respect to the Subnetwork Patents.

: SS

Initials of Preparer